Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| BANCO POPULAR DE PUERTO RICO  RECURRIDO  v.  IRIS N. RODRÍGUEZ PAGÁN T/C/C IRIS NEREIDA RODRÍGUEZ PAGÁN  PETICIONARIA | KLCE202401328 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina  Caso Núm. CA2019CV03482  Sobre: Ejecución de Hipoteca, Cobro de Dinero - Ordinario |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, el Juez Pagán Ocasio y la Jueza Barresi Ramos.

Pagán Ocasio, juez ponente.

# SENTENCIA

En San Juan, Puerto Rico, a 25 de febrero de 2025.

## I.

El 9 de diciembre de 2024, Iris N. Rodríguez Pagán t/c/c Iris Nereida Rodríguez Pagán (señora Rodríguez Pagán o peticionaria) presentó el *Recurso de Certiorari* solicitando que dejemos sin efecto la *Resolución Interlocutoria* emitida por el Tribunal de Primera Instancia, Sala Superior de Carolina (TPI o foro primario) el 21 de octubre de 2024, notificada y archivada digitalmente el 22 de octubre de 2024.[2] En el referido dictamen, el TPI declaró No Ha Lugar la *Moción solicitando relevo de Sentencia* radicada por la peticionaria la cual alegó que se le violentó el debido proceso de ley en este caso radicado en su contra por Banco Popular de Puerto Rico (Banco Popular o recurrido).

---

[1] Véase Orden Administrativa OATA 2021-086.
[2] Apéndice del *Certiorari*, Anejo 84, págs. 753-754.

El 4 de noviembre de 2024, la peticionaria radicó digitalmente una *Moción de Reconsideración a Resolución Interlocutoria*[3] la cual el TPI declaró No Ha Lugar el 4 de noviembre de 2024.[4]

El 13 de noviembre de 2024 emitimos una *Resolución* en la cual concedimos al Banco Popular un término de diez (10) días para exponer su posición sobre los méritos del recurso.

El 16 de enero de 2025, el Banco Popular radicó *Oposición a expedición a certiorari,* tras concederle una prórroga.

El 22 de enero de 2025 la peticionaria presentó *Solicitud de reembolso de gastos* solicitando que se le reembolse seiscientos sesenta y dos dólares con ochenta y cinco centavos ($662.85) por concepto de los gastos incurridos en el trámite de la presentación del recurso de *certiorari.*

El 23 de enero de 2025 emitimos una *Resolución* indicando que determinaríamos la procedencia de los gastos una vez adjudicado el recurso.

**II.**

El caso de marras tiene su génesis el 9 de septiembre de 2019 cuando Banco Popular presentó una *Demanda* sobre cobro de dinero y ejecución de hipoteca en contra de la peticionaria.[5] Basado en que el 26 de marzo de 2002 la peticionaria suscribió un pagaré hipotecario en favor de Doral Mortgage, Corp por la suma de veinte mil dólares ($20,000.00) con un interés anual de nueve punto noventa y cinco por ciento (9.95%) para garantizar una hipoteca sobre el inmueble ubicado en 67 Calle Betances, Canóvanas, Puerto Rico.[6] En la referida *Demanda,* el recurrido alegó que la peticionaria incumplió con el pagaré hipotecario a partir del 1 de marzo de 2017.[7] En esa línea, el recurrido arguyó que, la peticionaria adeudaba la

---

[3] Íd., Anejo 85, págs. 755-764.
[4] Íd., Anejo 86, págs. 765-766.
[5] Íd., Anejo 1, págs. 1-5.
[6] Íd., págs. 4-5.
[7] Íd., Anejo 1, pág. 2.

suma de dieciséis mil trescientos treinta y siete dólares y sesenta y nueve centavos ($16,337.69) en concepto de deuda hipotecaria.[8]  A su vez, Banco Popular solicitó que la señora Rodríguez Pagán cumpliese con el pago solidariamente y que se vendiera la propiedad en controversia en pública subasta.[9]

El 7 de octubre de 2019, la peticionaria radicó, por derecho propio, una *Moción solicitando desestimación* en la cual admitió que incumplió con varios pagos hipotecarios. Además, alegó que, Banco Popular no redactó detalladamente las alegaciones de la *Demanda*.[10] De la misma se desprende cierto tipo de desconexión lógica en su redacción.

El 4 de noviembre de 2019, la peticionaria presentó ante el foro primario por derecho propio *Moción solicitando remedio de desestimación* aduciendo que no se le había emplazado y que Banco Popular incumplió con redactar de forma detallada las alegaciones de la *Demanda*.[11] Contrario a su alegación, la peticionaria incluyó con la *Moción* el diligenciamiento del emplazamiento efectuado el 28 de septiembre de 2019.[12]

El 8 de noviembre de 2019, el TPI declaró No Ha Lugar a la *Moción solicitando remedio de desestimación*.[13]

Tras varios incidentes procesales, el 22 de noviembre de 2019, Banco Popular presentó *Solicitud de vista sobre viabilidad de mediación compulsoria* por entender que la propiedad es la residencia principal de la peticionaria de acuerdo con los escritos que esta había radicado.[14]

El 13 de noviembre de 2019 y notificada el 25 de noviembre de 2019, el foro primario emitió *Orden de referido al centro de*

---

[8] Íd.
[9] Íd., Anejo 1, pág. 3.
[10] Íd., Anejo 3, págs. 42-91.
[11] Íd., Anejo 5, págs. 95-99.
[12] Íd., Anejo 5, pág. 99.
[13] Íd., Anejo 6, pág. 100.
[14] Íd., Anejo 8, pág. 197.

*mediación de conflictos en casos de ejecución de hipotecas*, ordenando que las partes comparecieran al Centro de Mediación de Conflictos el 28 de febrero de 2020.[15]

El 9 de diciembre de 2019 la peticionaria presentó ante nos por derecho propio y en *forma pauperis*, el recurso de auto de *certiorari* y *Moción de Auxilio de Jurisdicción al Honorable Tribunal de Apelaciones*, el cual se le asignó el alfanumérico KLCE201901621, en que solicitó que ordenáramos al TPI a desestimar la *Demanda* y que el foro primario respondiese a las mociones presentadas por esta.[16]

El 17 de diciembre de 2019 y notificada el 18 de diciembre de 2019 un panel hermano denegó expedir el auto de *certiorari* por carecer de los fundamentos para expedir el mismo.[17]

El 5 de marzo de 2020, el Centro de Mediación de Conflictos radicó *Moción informativa en casos de ejecución de hipoteca* el cual notificó al foro primario que ambas partes comparecieron a la citación, pero una de las partes no aceptó o ambas partes no aceptaron participar de la mediación.[18]

El 6 de marzo de 2020, el TPI emitió una *Orden* indicando que la peticionaria debía presentar la *Contestación a la Demanda* en o antes del 10 de abril de 2020 so pena de anotarle de rebeldía.[19]

El 24 de junio de 2020, la peticionaria presentó *Moción por derecho propio* en la cual admitió y negó ciertas alegaciones de la *Demanda*.[20]

El 2 de julio de 2020 el foro primario emitió una notificación la cual determinó que acogió la *Moción* presentada por la peticionaria el 24 de junio de 2020, como *Contestación a la Demanda*

---

[15] Íd., Anejo 11, págs. 203-205.
[16] Íd., Anejo 12, págs. 206-336.
[17] Íd., Anejo 13, págs. 337-339.
[18] Íd., Anejo 15, págs. 341-342.
[19] Véase la Anotación Judicial Núm. 26 del expediente digital del caso en el Sistema Unificado de Manejo de Caso (SUMAC).
[20] Apéndice del *Certiorari*, Anejo 17, págs. 359-366.

y que esta debía anunciar a su representante legal no más tarde del 14 de agosto de 2020.[21]

El 13 de agosto de 2020 el TPI emitió una *Orden* señalando que la peticionaria debía comparecer con representación legal en o antes del 14 de septiembre de 2020.[22]

El 29 de septiembre de 2020, Banco Popular presentó *Réplica a moción por Derecho Propio, en Cumplimiento de Orden y Solicitud de Paralización de los procesos hasta el 31 de diciembre de 2020*.[23] El recurrido solicitó que se señalara una vista para determinar la capacidad de la peticionaria para continuar representándose por derecho propio y de ser necesario, designarle un defensor judicial a tenor con el lenguaje confuso e incongruente de sus mociones.[24] Además, Banco Popular brindó a la atención del TPI que en el caso de divorcio de la peticionaria (caso núm. FDI97-1845) se le declaró <u>incapaz mental</u> el 4 de octubre de 2007.[25] Con respecto a este particular, el TPI le designó un defensor judicial a causa de su incapacidad mental.[26] Subsiguiente, el foro primario resolvió que tras una evaluación psiquiátrica, la peticionaria sufría del trastorno mental esquizoide.[27] Ante esta información, Banco Popular solicitó que se celebrara una vista para determinar la capacidad de la peticionaria una vez concluya el periodo de moratoria.

Ese mismo día, el foro primario acogió la solicitud de Banco Popular para paralizar los procesos del caso. Empero, no se expresó ante el planteamiento de Banco Popular sobre la capacidad mental de la peticionaria.[28]

---

[21] Véase la Anotación Judicial Núm. 29 del expediente digital del caso en SUMAC.
[22] Véase la Anotación Judicial Núm. 31 del expediente digital del caso en SUMAC.
[23] Apéndice del *Certiorari*, Anejo 22, págs. 376-405.
[24] Íd., Anejo 22, pág. 376.
[25] Íd, Anejo 23, pág. 409.
[26] Íd.
[27] Íd., Anejo 24, pág. 415.
[28] Véase la Anotación Judicial Núm. 37 del expediente digital del caso en SUMAC.

Tras la paralización de los procedimientos a consecuencia de la pandemia del Covid-19, el 24 de septiembre de 2021, Banco Popular radicó *Solicitud de continuación de los procedimientos* para que se reanudaran los procedimientos del caso.[29]

El 27 de septiembre de 2021, el TPI declaró Ha Lugar la solicitud del recurrido.[30]

El 22 de noviembre de 2021, Banco Popular presentó *Moción en cumplimiento de orden y solicitud de señalamiento de vista al amparo de las Reglas 4.4 (c) y 15.2 de Procedimiento Civil* ante la preocupación de la capacidad mental de la peticionaria, por ende, solicitó la celebración de una vista para dilucidar si la peticionaria tiene la capacidad mental para comprender los procesos radicados en su contra. También, requirió que se le asignara un defensor judicial para salvaguardar los intereses de la peticionaria.[31]

Tras varios incidentes procesales con relación a varias *Mociones* incongruentes presentadas por la peticionaria, esta acudió nuevamente ante nos el 3 de marzo de 2022, de *forma pauperis* y por derecho propio, mediante la presentación del recurso de auto de *certiorari*, el cual se le asignó el alfanumérico KLCE202200238, solicitando que esta curia revisara varias *Resoluciones Interlocutorias* emitidas por el TPI. Dicha solicitud fue denegada, el 4 de marzo de 2022, por este mismo panel. [32]

El 7 de marzo de 2022, el foro primario celebró una vista sobre el estado de los procedimientos, de forma remota, a la cual la peticionaria no compareció.[33] Ante esta situación, el foro primario expresó sus dudas sobre la capacidad de la peticionaria para representarse por derecho propio.[34] En esa línea, ante las dudas

---

[29] Apéndice del *Certiorari*, Anejo 27, págs. 427-430.
[30] Véase la Anotación Judicial Núm. 43 del expediente digital del caso en SUMAC.
[31] Apéndice del *Certiorari,* Anejo 29, págs. 467-468.
[32] Íd., Anejo 35, págs. 480-485.
[33] Íd., Anejo 36, pág. 486.
[34] Íd.

suscitadas por Banco Popular con relación a la capacidad mental de la peticionaria, el TPI expresó que corroboraría la indigencia de la señora Rodríguez Pagán previo a la designación de un defensor judicial.

El 13 de abril de 2022, el TPI emitió *Orden designando abogado de oficio* a la Lcda. Yadira Hance Flores como la representante legal de la peticionaria.[35]

El 25 de mayo de 2022, la representante legal de la peticionaria presentó *Moción* en la que alegó que ha sido infructuosa la comunicación con su clienta a pesar de los intentos realizados.[36] Consecuentemente solicitó que fuese relevada de ser la representante legal de la señora Rodríguez Pagán.

El 19 de julio de 2022, el TPI celebró una vista, de forma virtual, de estado de los procedimientos en que determinó que atendería posteriormente la solicitud de relevo de representación legal, una vez celebrada la vista de seguimiento pautada para el 24 de agosto de 2020.[37]

El 11 de octubre de 2022, el foro primario celebró una vista de estado de los procedimientos, a la cual la peticionaria no compareció debido a que no se diligenció efectivamente la citación.[38] Así las cosas, el TPI determinó que una vez la peticionaria compareciera y pudiera determinar que esta ameritaba la designación de un defensor judicial entonces continuaba con los trámites ulteriores del caso.

El 6 de marzo de 2023, Banco Popular presentó *Moción reiterando se señale vista sobre designación de defensor judicial* solicitando que el TPI celebrase una vista para designar un defensor judicial para la señora Rodríguez Pagán.[39]

---

[35] Íd., Anejo 40, pág. 518.
[36] Íd., Anejo 41, pág. 519.
[37] Íd., Anejo 44, pág. 524.
[38] Íd., Anejo 45, págs. 525.
[39] Íd., Anejo 46, págs. 526-527.

El 7 de marzo de 2023, el TPI determinó que no procedía la celebración de una vista para designar un defensor judicial.[40] El TPI resolvió que "tras mucha reflexión" razonó que la peticionaria tiene la capacidad mental suficiente para comparecer a los asuntos del caso tras evaluar cuidadosamente la totalidad del expediente. Asimismo, relevó a la Lcda. Yadira Hance Flores de fungir como defensora judicial de la peticionaria.

El 30 de marzo de 2023, Banco Popular presentó *Solicitud de Sentencia Sumaria,* la cual solicitó que se dicte sentencia en su favor y permitiendo que se venda en pública subasta el inmueble en controversia debido a que la deuda era líquida, vencida y exigible.[41] A su vez esbozó que los siguientes hechos no estaban en controversia:

> …
> [37.] Las direcciones conocidas de la parte demandada son las siguientes: FISICA: **67 Calle Betances, Canóvanas, PR 00729,** y POSTAL: **67 Calle Betances, Canóvanas, PR 00729**.
> [38.] El bien inmueble sobre el cual surge el derecho o interés objeto de esta acción ubica en el Municipio de **Canóvanas**.
> [39.] El día **26 de marzo de 2002**, se otorgó ante el Notario **Pablo F. Jiménez Meléndez** testimonio número **1,932**, un pagaré a favor de **Doral Mortgage Corp.** o a su orden, por la suma principal de **$20,000.00** más intereses desde esa fecha hasta el pago total del principal a razón de **9.95%** anual sobre el balance adeudado, con un pago final de $16,483.56 al vencimiento al 1 de abril de 2017. El pagaré provee para pagar recargos por demora equivalentes al **5%** de la suma de aquellos pagos con atrasos en exceso de 15 días calendario de la fecha vencimiento. Además, en la escritura de hipoteca, las partes pactaron la suma **$2,000.00** para costas, gastos y honorarios de abogados en caso de reclamación judicial, así como el pago de otros cargos, recargos, penalidades y créditos accesorios.
> [40.] En aseguramiento del Pagaré Hipotecario antes mencionado se constituyó hipoteca voluntaria mediante la Escritura Número **78**, otorgada el día **26 de marzo de 2002**, ante el Notario **Pablo F. Jiménez Meléndez**, sobre el bien inmueble que se describe a continuación:
> URBANA: Solar marcado con el número nueve de la Calle Betánces del Pueblo de Canóvanas, Puerto Rico, con una extensión superficial de ciento ochenta y tres metros con quinientos quince milímetros cuadrados (183.515) y mide nueve metros veintiocho centímetros con el frente que da a la calle de su radicación catorce metros noventa y ocho centímetros en la línea recta hacia el fondo, en su colindancia izquierda entrando, once metros cuarenta y cinco centímetros en línea recta hacia su fondo, en su colindancia derecha entrando en donde tiene una reducción de dos metros cincuenta centímetros en línea transversal y seis metros setenta y

---

[40] Íd., Anejo 47, pág. 528.
[41] Íd., Anejo 48, págs. 529-545.

ocho centímetros en su colindancia al fondo y colinda por el NORTE, con corral de la casa de Don Luis Villalobos; por el SUR, con la Calle Betances en que radica; por el ESTE, con casa de Don Ciprián Pérez y por el OESTE, con casa de Luisa Cruz. Enclava sobre el solar antes descrito una casa de madera, techada de zinc, balcón de hormigón armado al frente midiendo veinte pies de frente por treinta de fondo siendo sus colindancias las mismas que las del solar en que enclava. Inscrita al Folio **106** del Tomo **51** de **Canóvanas**, Registro Inmobiliario del Estado Libre Asociado de Puerto Rico, **Sección Tercera (III) de Carolina**, Finca **3,023**.

[41.] La hipoteca descrita en el apartado anterior se encuentra inscrita al Folio **1** del Tomo **339** de **Canóvanas**, en el Registro Inmobiliario Digital del Estado Libre Asociado de Puerto Rico, **Sección Tercera (III) de Carolina**, inscripción **Canóvanas**.

[42.] La parte demandada, se comprometió en el contrato hipotecario a pagar las contribuciones sobre la propiedad, además de otros cargos e imposiciones atribuibles a la misma. La parte demandada tiene que ser compelida a dichos pagos o, en su defecto, mostrar la documentación que evidencie dichos pagos, o un acuerdo escrito aceptable para la parte demandante, o evidencia que acredite que el deudor ha impugnado los cargos o imposiciones de las agencias con jurisdicción (C.R.I.M.) sobre el inmueble dado en garantía y el cual es objeto de este pleito.

[43.] La parte demandante es el actual tenedor de buena fe del pagaré objeto de la presente reclamación, habiéndolo adquirido por valor recibido y/o por endoso en el curso ordinario de sus negocios.

[44.] El último pago que la parte demandada realizó fue el correspondiente al pago vencedero el **1 de marzo de 2017** y en su consecuencia ha incurrido en el incumplimiento de su obligación de pagar en plazos mensuales el principal y los intereses según acordado.

[45.] En virtud del referido pagaré hipotecario que la parte demandante tiene en su poder y la referida escritura de hipoteca, la parte demandada le adeuda la suma de **$16,337.69** por concepto de principal, más intereses al tipo pactado de **9.95%** anual desde el **1 de marzo de 2017**. Dichos intereses continuarán acumulándose hasta el pago total de la obligación. Además, la parte demandada adeuda a la parte demandante los cargos por demora equivalentes al **5%** de la suma de aquellos pagos con atrasos en exceso de 15 días calendario de la fecha vencimiento; más la suma de **$2,000.00** para costas, gastos y honorarios de abogado, más otros cargos, recargos, penalidades y créditos accesorios según pactados.

[46.] La parte demandante ha realizado gestiones para obtener el pago de las sumas reclamadas resultando tales gestiones infructuosas por lo cual declaró vencida, líquida y exigible la totalidad de la deuda.

[47.] En cumplimiento con la Ley Núm. 184, según enmendada, las partes fueron referidas al proceso de mediación compulsoria, al que ambas comparecieron, sin que se lograra un acuerdo satisfactorio entre las partes luego que la demandada no aceptara participar del proceso, por lo que el Centro de Mediación de Conflictos devolvió el caso ante la consideración del Tribunal.

[48.] Al presente, no existe una solicitud formal en mitigación de pérdidas ("Loss Mitigation") en el Departamento de Mitigación de Pérdidas de la parte demandante, según establecido en el Consumer Financial Protection Bureau ("CFBP"), la "Real Estate Settlement Procedures Act" ("RESPA"), así como el Reglamento X y la Ley Núm. 169-2016, conocida como "Ley de Ayuda al Deudor Hipotecario" (en adelante la "Ley 169").

[49.] Por información y creencia la parte demandada, no es menor de edad ni incapaz. Tampoco sirve actualmente en las Fuerzas Armadas de los Estados Unidos.

Énfasis en el original.

El 25 de mayo de 2023 el TPI emitió una *Sentencia* Sumaria en favor del recurrido,[42] en la que formuló los siguientes hechos no controvertidos:

1. Las direcciones conocidas de la parte demandada son las siguientes: FISICA: 67 Calle Betances, Canóvanas, PR 00729. y POSTAL: 67 Calle Betances, Canóvanas, PR 00729.

2. La propiedad inmueble sobre la que surge el derecho o interés de la parte demandante, objeto de esta acción ubica en el Municipio de Canóvanas.

3. El 26 de marzo de 2002, se otorgó ante el Notario Pablo F. Jiménez Meléndez testimonio número 1,932, un pagaré a favor de Doral Mortgage Corp. o a su orden, por la suma principal de $20,000.00 más intereses desde esa fecha hasta el pago total del principal a razón de 9.95% anual sobre el balance adeudado. El pagaré provee para pagar recargos por demora equivalentes al 5% de la suma de aquellos pagos con atrasos en exceso de 15 días calendario de la fecha vencimiento. Además, en la escritura de hipoteca, las partes pactaron la suma $2,000.00 para costas, gastos y honorarios de abogados en caso de reclamación judicial, así como el pago de otros cargos, recargos, penalidades y créditos accesorios.

4. En aseguramiento del pagaré hipotecario antes mencionado se constituyó hipoteca voluntaria mediante la Escritura Número 78, otorgada el día 26 de marzo de 2002, ante el Notario Pablo F. Jiménez Meléndez, sobre la propiedad inmueble que se describe a continuación:

URBANA: Solar marcado con el número nueve de la Calle Betánces del Pueblo de Canóvanas, Puerto Rico, con una extensión superficial de ciento ochenta y tres metros con quinientos quince milímetros cuadrados (183.515) y mide nueve metros veintiocho centímetros con el frente que da a la calle de su radicación catorce metros noventa y ocho centímetros en la línea recta hacia el fondo, en su colindancia izquierda entrando, once metros cuarenta y cinco centímetros en línea recta hacia su fondo, en su colindancia derecha entrando en donde tiene una reducción de dos metros cincuenta centímetros en línea transversal y seis metros setenta y ocho centímetros en su colindancia al fondo y colinda por el NORTE, con corral de la casa de Don Luis Villalobos; por el SUR, con la Calle Betances en que radica; por el ESTE, con casa de Don Ciprián Pérez y por el OESTE, con casa de Luisa Cruz.

Enclava sobre el solar antes descrito una casa de madera, techada de zinc, balcón de hormigón armado al frente midiendo veinte pies de frente por treinta de fondo siendo sus colindancias las mismas que las del solar Inscrita al Folio 106 del Tomo 51 de Canóvanas, Registro Inmobiliario Digital del Estado Libre Asociado de Puerto Rico, Sección Tercera (III) de Carolina, Finca Número 3,023.

5. La hipoteca descrita en el apartado anterior se encuentra inscrita al Folio 1 del Tomo 339 de Canóvanas, en el Registro Inmobiliario Digital del Estado Libre Asociado de Puerto Rico, Sección Tercera (III) de Carolina, inscripción Canóvanas.

---

[42] Íd., Anejo 49, págs. 546-559.

6. En el contrato hipotecario, la parte demandada, Iris N. Rodríguez Pagán t/c/c Iris Nereida Rodríguez Pagán, se comprometió a pagar las contribuciones sobre la propiedad, además de otros cargos e imposiciones atribuibles a la misma. La parte demandada tiene que ser compelida a dichos pagos o, en su defecto, mostrar la documentación que evidencie dichos pagos, o un acuerdo escrito aceptable para la parte demandante, o evidencia que acredite que el deudor ha impugnado los cargos o imposiciones de las agencias con jurisdicción (C.R.I.M.) sobre el inmueble dado en garantía y el cual es objeto de este pleito.

7. La parte demandante es el actual tenedor de buena fe del pagaré objeto de la presente reclamación, habiéndolo adquirido por valor recibido y/o por endoso en el curso ordinario de sus negocios.

8. El último pago que la parte demandada realizó fue el correspondiente al pago vencedero el 1 de marzo de 2017, por lo que incurrió en el incumplimiento de su obligación de pagar en plazos mensuales el principal y los intereses según acordados.

9. En virtud del referido pagaré hipotecario que la parte demandante tiene en su poder y la referida escritura de hipoteca, la parte demandada le adeuda la suma de $16,337.69 por concepto de principal, más intereses al tipo pactado de 9.95% anual desde el 1 de marzo de 2017, los cuales continuarán acumulándose hasta el pago total de la obligación. Además, la parte demandada adeuda a la parte demandante los cargos por demora equivalentes al 5% de la suma de aquellos pagos con atrasos en exceso de 15 días calendario de la fecha vencimiento; más la suma de $2,000.00 para costas, gastos y honorarios de abogado, más otros cargos, recargos, penalidades y créditos accesorios según pactados.

10. La parte demandante realizó gestiones para obtener el pago de las sumas reclamadas resultando tales gestiones infructuosas, por consiguiente, declaró el préstamo vencido y la deuda es líquida, está vencida y es exigible.

11. En cumplimiento con la Ley Núm. 184, según enmendada, las partes fueron referidas al proceso de mediación compulsoria, al que ambas comparecieron, sin que se logrará acuerdo satisfactorio entre ambas, ya que la parte demandada Iris N. Rodríguez Pagán t/c/c Iris Nereida Rodríguez Pagán, no aceptó, participar del proceso de mediación compulsoria, por lo tanto, el Centro de Mediación de Conflictos devolvió el caso ante nuestra consideración.

12. La parte demandante acreditó que, al presente, no existe una solicitud formal en mitigación de pérdidas ("Loss Mitigation") en el Departamento de Mitigación de Pérdidas de la parte demandante, según establecido en el Consumer Financial Protection Bureau ("CFBP"), la "Real Estate Settlement Procedures Act" ("RESPA"), así como el Reglamento X y la Ley Núm. 169-2016, conocida como "Ley de Ayuda al Deudor Hipotecario" (en adelante la "Ley 169").

13. La parte demandada, Iris N. Rodríguez Pagán t/c/c Iris Nereida Rodríguez Pagán, no es menor de edad ni incapaz y conforme a la Certificación, no sirve actualmente en las Fuerzas Armadas de los Estados Unidos.

Énfasis omitido.

Por lo cual, el foro primario ordenó que la peticionaria pagara la suma de veinte mil dólares ($20,000.00) en concepto de la deuda del pagaré hipotecario y los intereses adeudados. De lo contrario, el

inmueble sería vendido en subasta pública para satisfacer la deuda de Banco Popular.

El 6 de julio de 2023, el recurrido presentó *Solicitud de Ejecución de Sentencia* debido a que la peticionaria no había cumplido con lo ordenado en la *Sentencia Sumaria.* A su vez, solicitó que se ordenara la venta en pública subasta de la propiedad de la peticionaria.[43]

El 7 de julio de 2023 el TPI emitió *Orden de Ejecución de sentencia y venta de bienes* ordenando que se expidiese *Mandamiento de Ejecución de Sentencia* el cual contenía las directrices de la venta del inmueble en la subasta pública.[44]

El 17 de julio de 2023 la peticionaria presentó Moción *¡Atención! Hon. Administradora Inhiba Hon. Juez Reconsidere Orden Solicitud Tiempo Adicional y Otras* en la cual solicitó que se detuviese las órdenes emitidas por el foro primario.[45] En la *Moción*, la peticionaria anejó varios documentos que no eran relacionados a su reclamo. Además, la redacción de la misma es inconexa y confusa.

Al día siguiente, el TPI emitió una *Orden* declarando No Ha Lugar a la *Moción* previamente presentada por la peticionaria.[46] Asimismo, el foro primario señaló que la señora Rodríguez Pagán incumplió con la Regla 63 de Procedimiento Civil, 32 LPRA Ap. V, R. 63, con respecto a la solicitud inhibición.

El 7 de agosto de 2023, la peticionaria presentó, una vez más, un recurso de auto de *certiorari*, por derecho propio y en *forma pauperis*, el cual se le asignó el alfanumérico KLCE202300864.[47]

El 10 de agosto de 2023 y notificada el 11 de agosto de 2023, este panel denegó la expedición del auto de *certiorari* por no versar

---

[43] Íd., Anejo 50, págs. 560-567.
[44] Íd., Anejo 51, págs. 568-570.
[45] Íd., Anejo 52, págs. 571-587.
[46] Íd., Anejo 53, pág. 588.
[47] Íd., Anejo 54, pág. 589.

sobre los asuntos en los que podemos ejercer nuestra facultad revisora.[48]

El 18 de agosto de 2023, la señora Rodríguez Pagán radicó un escrito por derecho propio y en *forma pauperis* titulado *Moción* solicitando a este panel que reconsidere el dictamen emitido.[49] No obstante, el 30 de agosto de 2023, este panel declaró No Ha Lugar la *Moción* instada por la peticionaria.[50]

Así las cosas, el 3 de octubre de 2023, Banco Popular presentó *Solicitud de orden de confirmación de venta* indicando que el inmueble en controversia fue vendido en pública subasta a Luis Corchado Serrano.[51] En esa línea, el recurrido solicitó que se emitiera la *Orden de Confirmación de Venta.*

Ese mismo día, Banco Popular presentó *Solicitud de Retiro de Fondos* para que se le expidiese el cheque por la cantidad de treinta y dos mil doscientos cuatro dólares con cuarenta y tres centavos ($32,204.43).[52]

El 4 de octubre de 2023, el TPI emitió una notificación autorizando el retiro de fondos.[53]

En atención a todos los trámites relacionados a la venta del inmueble, el 6 de noviembre de 2023, la peticionaria radicó *Cumplementaria Moción Hon. Jueza Administradora y Hon. Juez y otros* en el que la peticionaria indicó que teme por su seguridad. Además, expresó que, estaba sufriendo un quebranto de salud.[54] Asimismo, alegó que, no fue notificada de la ejecución de hipoteca y la venta de su propiedad. A su vez, la peticionaria expresó que, esta curia abusó de su discreción en su facultad revisora y fue imparcial.

---

[48] Íd., Anejo 55, págs. 590-595.
[49] Íd., Anejo 56, págs. 596-610.
[50] Íd., Anejo 57, págs. 611-612.
[51] Íd., Anejo 58, págs. 613-615.
[52] Íd., Anejo 59, págs. 616-618.
[53] Íd., Anejo 60, pág. 619.
[54] Íd., Anejo 62, págs. 623-636.

En fin, indicó que los alguaciles le habían restringido su movimiento y sufrió persecución por parte de ellos.

El 6 de noviembre de 2023, TPI emitió una *Orden* expresando que de la peticionaria sentirse que temía por su vida, debía llamar a la Policía de Puerto Rico o radicar una querella en la Sala de Investigaciones. Asimismo, reiteró que debía procurar tener representación legal.[55]

El 13 de diciembre de 2023, Luis Corchado Serrano presentó *Demanda de desahucio* (caso núm. CN2023CV00495) debido a que la señora Rodríguez Pagán continuaba viviendo en la propiedad que adquirió en pública subasta.[56]

Tras varias mociones incongruentes presentadas por la peticionaria y el TPI ordenar que cumpliese con el dictamen emitido, el 11 de marzo de 2024, la señora Rodríguez Pagán presentó nuevamente un recurso de auto de *certiorari,* ante este Tribunal, al cual se le asignó el alfanumérico KLCE202400299.[57]

El 14 de marzo de 2024, este mismo panel denegó la expedición del recurso del auto de *certiorari* ante el incumplimiento de la peticionaria con la Regla 34 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 34, y consecuentemente, no colocó este panel en posición de intervenir.[58]

El 3 de abril de 2024, la peticionaria radicó una *Moción de Reconsideración* ante esta curia la cual no tenía coherencia en sus alegaciones.[59]

El 5 de abril de 2024 y notificada el 8 de abril de 2024, declaramos No Ha Lugar la *Moción de Reconsideración* al presentarse fuera del término jurisdiccional de quince (15) días

---

[55] Íd. Anejo 63, pág. 637.
[56] Íd., Anejo 76, págs. 687-693.
[57] Íd., Anejo 72, págs. 653-672.
[58] Íd., Anejo 73, págs. 673-679.
[59] Íd., Anejo 74, págs. 680-683.

conforme la Regla 84 del Reglamento del Tribunal de Apelaciones, supra, R.84.[60]

El 16 de febrero de 2024 y notificada el 20 de febrero de 2024, el foro primario emitió *Orden designando abogado de oficio* para designar a la Lcda. Patricia Toledo García como la representante legal en el caso sobre desahucio.[61]

El 13 de mayo de 2024, el TPI emitió *Orden designando defensor judicial* de la peticionaria al Lcdo. Jovani Manuel Narváez Oliver para que le asistiese con los procedimientos relacionados al desahucio solicitado en su contra.[62]

El 5 de septiembre de 2024, la peticionaria presentó, por conducto del defensor judicial y la abogada de oficio designada, *Moción en solicitud de extensión de nombramiento de abogada de oficio y defensor judicial en caso civil CA2019CV03482 en representación de la demandada y en solicitud de consolidación de casos CN2023CV00495 y CA2019CV03482.*[63] Cónsono con lo anterior, la representación legal y el defensor judicial de la peticionaria solicitaron que se les extendiera el nombramiento en el caso sobre ejecución de hipoteca, para poder solicitar un relevo de sentencia.

Simultáneamente, la señora Rodríguez Pagán radicó *Moción solicitando relevo de sentencia* solicitando que el TPI declarase nula la *Sentencia* emitida el 25 de mayo de 2023 puesto que se le violentó el debido proceso de ley de la peticionaria por no asignársele un defensor judicial toda vez que esta carece de capacidad de obrar. Además, alegó que, el TPI no tomó las medidas correspondientes pese al evidente estado mental de la peticionaria. Asimismo, aludió que, el foro primario incumplió en celebrar una vista para

---

[60] Íd., Anejo 75, págs. 684-686.
[61] Íd., Anejo 77, págs. 694-695.
[62] Íd., Anejo 78, págs. 696-697.
[63] Íd., Anejo 79, págs. 698-699.

determinar la capacidad mental de la peticionaria. Consecuentemente, se le violentó su debido proceso de ley al afectársele un interés propietario. Por ende, procedía, según la Regla 49.2 de Procedimiento Civil, supra, R. 49.2, decretar nula la sentencia toda vez que se emitió sin tener en consideración la incapacidad mental de la peticionaria.[64]

El 6 de septiembre de 2024, el TPI emitió dos (2) *Resoluciones* el cual concedió que se extendieran los nombramientos previamente solicitados.[65]

Ante ello, el 30 de septiembre de 2024, Banco Popular presentó *Oposición a moción solicitando relevo de sentencia* indicando que la capacidad de la persona se presume en nuestro estado de derecho por lo que todo el caso el TPI presumió la capacidad de esta. Subsiguientemente, expresó que, el TPI esbozó que la peticionaria tenía capacidad mental durante el transcurso del caso. Asimismo, el foro primario actuó conforme a nuestro estado de derecho en proveerle todos los medios que requería la peticionaria para comparecer en el caso. No obstante, la propia peticionaria obstaculizó el proceso. Por ende, el TPI no debería decretar nula la sentencia.[66]

El 21 de octubre de 2024 el TPI emitió una *Resolución Interlocutoria* declarando No Ha Lugar a la *Solicitud de relevo de Sentencia* presentada por la peticionaria.[67] Además, aludió que, la peticionaria incumplió con las prórrogas que el foro primario le había concedido para expresarse.

El 4 de noviembre de 2024, la peticionaria presentó *Moción de reconsideración* arguyendo que esta no incumplió con ninguna prórroga debido que no se concedió ninguna en el transcurso del

---

[64] Íd., Anejo 82, págs. 703-748.
[65] Íd., Anejo 80, pág. 700; Íd., Anejo 81, págs. 701-702.
[66] Íd., Anejo 83, págs. 749-752.
[67] Íd., Anejo 84, págs. 753-754.

caso. De igual forma, la representación legal de la peticionaria estaba haciendo las gestiones necesarias para que los peritos la evaluaran. Además, adujo que, varios documentos relacionados a las evaluaciones en casos anteriores relacionados al estado mental de la peticionaria se traspapelaron por lo que no se pudo tomar en consideración las alegaciones relacionadas al estado mental de la peticionaria. Finalmente, iba a presentar un informe pericial confirmando la incapacidad mental de la peticionaria.[68]

El 4 de noviembre y notificada el 12 de noviembre de 2024, el TPI emitió una *Resolución Interlocutoria* en la cual declaró No ha lugar la solicitud de reconsideración.[69]

Inconforme con el dictamen, la peticionaria acudió e imputó los siguientes señalamientos de error:

> Erró el TPI al declarar NO HA LUGAR la "Moción Solicitando Relevo de Sentencia" radicada por la demandada el 5 de septiembre de 2024 a pesar del historial contenido en el expediente del caso, las incoherentes e irracionales mociones de la demandada que evidenciaban su incapacidad mental, así como la declaración de incapacidad de la demandada que ya existía en el caso de divorcio de ésta del año 2007.

> Erró el TPI al ignorar en tres (3) ocasiones las solicitudes de la parte demandante Banco Popular de Puerto Rico a los efectos de que se celebrara una vista sobre la incapacidad mental de la demandada y de ser necesario se le nombrara un defensor judicial, lo cual nunca ocurrió, violentándose así el debido proceso de ley de la demandada y convirtiendo en nula la sentencia que dictó en el caso de ejecución de hipoteca y por tanto todo el procedimiento.

En síntesis, la peticionaria alegó que el recurrido le informó al TPI en múltiples ocasiones sobre el estado mental de ésta, en cumplimento con la Regla 4.4(c) de Procedimiento Civil, supra, R. 4.4 (c) y la Regla 15.2 de Procedimiento Civil, supra, R. 15.2. Asimismo, trajo a la atención del foro primario que la señora Rodríguez Pagán fue previamente declarada incapaz judicialmente. Además, Banco Popular tenía conocimiento sobre la incapacidad de la señora Rodríguez Pagán. Por ende, el TPI estaba obligado a

---

[68] Íd., Anejo 85, págs. 755-764
[69] Íd., Anejo 86, págs. 765-766.

celebrar una vista para corroborar la capacidad de la peticionaria para decidir si corresponde la determinación de un defensor judicial. Ante tal circunstancia, el foro primario continuó con la maquinaria judicial en contra de una persona la cual su capacidad estaba siendo cuestionada.

Consecuentemente, procedía decretar nula la sentencia del TPI, según la Regla 49.2 de Procedimiento Civil, supra, R. 49.2, debido a que la Sentencia fue emitida en violación al debido proceso de ley. Asimismo, conforme la Regla 49.2 de Procedimiento Civil, supra, R. 49.2, de violentarse el debido proceso de ley, una sentencia debe decretarse nula sin importar que haya transcurrido más de seis (6) meses desde que se haya presentado la mencionada *moción*. En fin, a la luz de lo expuesto, la peticionaria nos solicita que decretemos nula la sentencia ante la falta de capacidad que podía suplir en el pleito de ejecución de la hipoteca.

En atención al presente recurso, Banco Popular presentó *Oposición a expedición de certiorari* el 16 de enero de 2025. En síntesis, alegó que, la peticionaria presentó la *Solicitud de relevo de Sentencia* un año posterior a la notificación de la *Sentencia*. Así las cosas, el TPI determinó que la peticionaria tenía la capacidad mental suficiente para comprender la causa de acción radicada en su contra. Cónsono lo anterior, el TPI no estaba obligado a celebrar una vista para atender la capacidad de la señora Rodríguez Pagán al poseer amplia discreción para determinar si procedía la misma. Además, según el recurrido, la capacidad mental de la persona se presume siempre y cuando no sea rebatida, tal como el presente caso. Por consiguiente, el foro primario determinó basándose en la totalidad del expediente que la peticionaria no carece de capacidad para comprender los procedimientos judiciales. Por ende, procede que esta desaloje el inmueble sujeto a desahucio.

**III.**

**A.**

El auto de *certiorari* es un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. ***Medina Nazario v. McNeill Healthcare LLC,*** 194 DPR 723, 728 (2016).  Es en esencia un recurso extraordinario por el cual se solicita a un tribunal de mayor jerarquía la corrección de un error cometido por el tribunal inferior. supra, pág. 729. Distinto al recurso de apelación, el tribunal revisor tiene la facultad de expedir el recurso de manera discrecional, por tratarse de ordinario de asuntos interlocutorios. No obstante, nuestra discreción debe ejercerse de manera razonable, y siempre procurar lograr una solución justa. ***Torres Martínez v. Torres Ghigliotty***, 175 DPR 83, 98 (2008).

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, establece las instancias en las que el foro revisor posee autoridad para expedir el auto de certiorari sobre materia civil.[70] ***Scotiabank de Puerto Rico v. ZAF Corporation, et als.****,* 202 DPR 478 (2019). A su vez, dicha regla sufrió varios cambios fundamentales encaminados a evitar la revisión judicial de aquellas órdenes o resoluciones que dilataban innecesariamente el proceso pues

---

[70] Esta Regla dispone que:
      [....]
      El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios (sic), anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.
      Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto en la Regla 50 sobre los errores no perjudiciales.

pueden esperar a ser revisadas una vez culminado el mismo, uniendo su revisión al recurso de apelación. ***Medina Nazario v. McNeill Healthcare LLC,*** *supra.* En esa línea, el rol de este foro al atender recursos de *certiorari* descansa en la premisa de que es el foro de instancia quien está en mejor posición para resolver controversias interlocutorias y con el cuidado que debemos ejercer para no interrumpir injustificadamente el curso ordinario de los pleitos que se están ventilando en ese foro. ***Torres Martínez v. Torres Ghigliotty***, 175 DPR 83, 98 (2008).

Si el asunto comprendido en el recurso de *certiorari* está en una de las instancias establecidas en la Regla 52.1 de Procedimiento Civil, *supra*, entonces este foro ejerce un segundo escrutinio. Este se particulariza por la discreción que se le ha sido conferida al Tribunal de Apelaciones para expedir, autorizar y adjudicar en sus méritos el caso. Para poder ejercer de manera razonable y prudente la facultad discrecional concedida, la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, R. 40, establece los criterios que debemos tener ante nuestra consideración al atender una solicitud de expedición de un auto de *certiorari*.[71]

**B.**

En nuestra jurisdicción, las sentencias gozan de una presunción de corrección. ***Nieves Díaz v. González Massas***, 178 DPR 820, 840 (2010). Sin embargo, la parte que interese atacar la

---

[71] Esta Regla dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

validez de un dictamen tiene disponible dos mecanismos: la moción dispuesta en la Regla 49.2 de Procedimiento Civil, supra, R. 49.2 o un pleito independiente de nulidad de sentencia. *Rivera v. Jaume*, 157 DPR 562, 573 (2002). La referida regla persigue balancear dos principios cardinales de nuestro ordenamiento jurídico, "el interés de que los casos se resuelvan en los méritos haciendo justicia sustancial" y el interés de que "los litigios lleguen a su fin". *García Colón et al. v. Sucn. González*, 178 DPR 527, 540 (2010). La Regla 49.2 de Procedimiento Civil, supra, R. 49.2, establece que,

> Mediante una moción y bajo aquellas condiciones que sean justas, el tribunal podrá relevar a una parte o a su representante legal de una sentencia, orden o procedimiento por las razones siguientes:
>
> (a) error, inadvertencia, sorpresa o negligencia excusable;
>
> (b) descubrimiento de evidencia esencial que, a pesar de una debida diligencia, no pudo haber sido descubierta a tiempo para solicitar un nuevo juicio de acuerdo con la Regla 48;
>
> (c) fraude (incluso el que hasta ahora se ha denominado "intrínseco" y el también llamado "extrínseco"), falsa representación u otra conducta impropia de una parte adversa;
>
> **(d) nulidad de la sentencia;**
>
> (e) la sentencia ha sido satisfecha, renunciada o se ha cumplido con ella, o la sentencia anterior en que se fundaba ha sido revocada o de otro modo dejada sin efecto, o no sería equitativo que la sentencia continúe en vigor, o
>
> (f) cualquier otra razón que justifique la concesión de un remedio contra los efectos de una sentencia.

Para que proceda la mencionada regla es necesario que el peticionario aduzca una de las razones enumeradas en la regla para tal relevo. *Reyes v. ELA et. al*, 155 DPR 799, 809 (2001). El relevar a una parte de los efectos de una sentencia es una decisión discrecional, salvo en los casos de nulidad o cuando la sentencia ha sido satisfecha. *Rivera v. Algarín*, 159 DPR 482, 490 (2003). Salvo que sea nula o haya sido satisfecha, la concesión del relevo de una sentencia dependerá del ejercicio de la discreción del tribunal quien deberá determinar si ello se justifica a tenor de las circunstancias particulares del caso. *García Colón et al. v. Sucn. González*, supra. pág. 540. La referida regla debe interpretarse liberalmente y

cualquier duda debe resolverse a favor del que solicita que se deje sin efecto una anotación de rebeldía o una sentencia, a fin de que el proceso continúe y el caso pueda resolverse en sus méritos. supra, pág. 541. No obstante, el Tribunal Supremo ha expresado que la mencionada regla "no constituye una llave maestra para reabrir controversias ni sustituye los recursos de apelación o reconsideración." *García Colón et al. v. Sucn. González* supra, pág. 541. A su vez, no puede usarse "para impugnar cuestiones sustantivas que debieron levantarse antes de la sentencia como defensas afirmativas, o luego de la sentencia en un recurso de revisión". *Rivera v. Algarín*, supra pág. 490. Ha enfatizado el Tribunal Supremo que esta moción "no está disponible para corregir errores de derecho ni errores de apreciación o valoración de la prueba". *García Colón et al. v. Sucn. González*, supra, pág. 543. Para conceder un remedio contra los efectos de una sentencia, el tribunal debe determinar si bajo las circunstancias específicas del caso existen razones que justifiquen tal concesión. *García Colón et al. v. Sucn. González*, supra, pág. 540. Ahora bien, el tribunal tiene facultad de relevar a una parte de los efectos de la sentencia cuando se decrete su nulidad. *García Colón et al. v. Sucn. González*, *supra*, pág. 543. Una sentencia es nula cuando se ha dictado sin jurisdicción o cuando se ha quebrantado el debido proceso de ley. *García Colón et al. v. Sucn. González,* supra, pág. 543. Dispone el inciso cuatro (4) de la Regla 49.2 de Procedimiento Civil, *supra*, R. 49.2, que se puede relevar a una parte de los efectos de una sentencia nula, lo cual es aquella que se ha dictado sin jurisdicción o cuando "al dictarla se ha quebrantado el debido proceso de ley". *García Colón et al. v. Sucn. González,* supra, pág. 543. El inciso cuatro (4) de la Regla 49.2 de Procedimiento Civil, supra, R. 49.2, le otorga la facultad al tribunal de relevar a una parte de una sentencia cuando se determine nula. *García Colón v. Sucn. González,* supra,

pág. 543. Si una sentencia es nula no hay discreción para el relevo y existe un deber de que sea decretada nula. ***García Colón v. Sucn. González***, supra, pág. 544. El Tribunal Supremo ha expresado que ante la certeza de que la sentencia sea nula, es mandatorio declarar su inexistencia jurídica, <u>independientemente</u> de que realice con posterioridad a haber expirado el plazo de seis (6) meses establecidos en la mencionada regla. ***García Colón v. Sucn. González***, supra, pág. 544.

### C.

La Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico establece que, ninguna persona será privada de su libertad o propiedad sin el debido proceso de ley, ni se negará a persona alguna en Puerto Rico la igual protección de las leyes. Art II, Sec. 7, **Const. ELA** [Const. PR], LPRA, Tomo 1. El debido proceso de ley tiene dos vertientes que son: sustantiva y procesal. El debido proceso de ley sustantivo los tribunales están obligados a examinar examinan la validez de una ley, a la luz de los preceptos constitucionales pertinentes, con el propósito de proteger los derechos fundamentales de las personas. ***Rivera Rodriguez & Co. v. Stowell Taylor***, 133 DPR 881, 887 (1999). Por otro lado, el debido proceso de ley en su vertiente procesal le impone al Estado la obligación de garantizar que la interferencia con los intereses de libertad y propiedad del individuo se haga a través de un procedimiento que sea justo y equitativo. ***Rivera Rodriguez & Co. v. Stowell Taylor***, supra, pág. 888. Para que se active el debido proceso de ley procesal, debe haber una interferencia con algún derecho propietario o de libertad. ***Rivera Rodriguez & Co. v. Stowell Taylor***, supra, pág. 888. Al aplicar este principio, existe una obligación del estado en velar por los intereses propietarios y de libertad y, a su vez, evaluar las circunstancias particulares de cada

caso. ***PAC v. ELA***, 150 DPR 358 (2000). Cónsono con lo anterior y de conformidad al debido proceso de ley procesal, el tribunal vendrá obligado a evaluar el estado mental de un demandado, para garantizar un proceso justo y equitativo, tanto a éste como al demandante. ***Rivera y Otros v. Banco Popular***, 152 DPR 140, 161 (2000), esc. 17.

Como cuestión de umbral, en nuestro sistema de derecho existe una presunción de capacidad. ***Jiménez v. Jiménez***, 76 DPR 718, 733 (1954). Dicha capacidad puede quedar restringida por diversas condiciones, tales como la minoría de edad, la demencia y la prodigalidad, entre otras. Art. 181 del derogado Código Civil de 1930, 31 LPRA ant. sec. 703[72]; ***Rivera y Otros v. Banco Popular***, supra, pág. 157. Las mencionadas condiciones son restricciones a la capacidad de obrar y no prohibiciones por lo que pueden ser subsanadas por medios supletorios. ***Rivera y Otros v. Banco Popular***, supra, pág. 157.

La Regla 4.4(c) de Procedimiento Civil, supra, R. 4.4(c) establece que:

> En todos los demás casos en que la parte demandante, su abogado, abogada o la persona que diligencie el emplazamiento tenga fundamento razonable para creer que la persona que será emplazada está incapacitada mentalmente, deberá notificarlo al tribunal para que éste proceda de acuerdo con lo dispuesto en la Regla 15.2(b).

La obligación impuesta en la referida regla se extiende luego del emplazamiento, al abogado, demandante y emplazador. ***Rivera y Otros v. Banco Popular***, supra, pág. 159. De existir duda de la capacidad mental del demandado, se le debe notificar al foro primario. ***Rivera y Otros v. Banco Popular***, supra, pág. 159. Asimismo, la Regla 15.2 de Procedimiento Civil, supra, R. 15.2, dispone que:

> (b) En los casos previstos en la última oración de la Regla 4.4(c) y en la Regla 22.2, el tribunal determinará sobre el

---

[72] Es de aplicación el derogado Código Civil de 1930, 3 LPRA sec. 1, por los hechos acontecer durante la vigencia de este código.

estado mental de la parte y si es conveniente y procede el nombramiento de un defensor o una defensora judicial.

## IV.

En el caso de marras, la señora Rodríguez Pagán solicitó, representada por una abogada de oficio recientemente nombrada, que revoquemos la *Resolución Interlocutoria* del TPI en la cual denegó la *Moción solicitando relevo de sentencia.*

La peticionaria arguyó que el TPI erró puesto que no pudo defenderse adecuadamente durante el transcurso del caso a causa de su incapacidad. Consecuentemente, ante este estado de indefensión la señora Rodríguez Pagán alegó que se le violentó su debido proceso de ley.

Tras un análisis objetivo, cuidadoso y sereno del expediente y en correcta práctica adjudicativa apelativa, resulta forzoso concluir que el TPI erró en emitir la *Resolución Interlocutoria* determinando que no procede la *Moción solicitando relevo de Sentencia.*

En primer lugar, el TPI incumplió en celebrar una vista en el caso de ejecución de hipoteca, para determinar si la peticionaria carecía de tener capacidad toda vez que desde el inicio del pleito surge la capacidad minorada de esta a raíz de sus escritos inconexos e incomprensibles; las dudas suscitadas por Banco Popular y de una previa determinación de incapacidad. Ciertamente, conforme la Regla 4.4 (c) de Procedimiento Civil, supra, R. 4.4 (c) y la Regla 15.2 de Procedimiento Civil, supra, R. 15.2, Banco Popular cumplió en notificar, en varias ocasiones, al TPI sobre las dudas que tenía con relación a la capacidad de la peticionaria para comprender los procedimientos judiciales. No obstante, el foro primario hizo caso omiso a tales solicitudes e incumplió en celebrar una vista para determinar la capacidad mental de la peticionaria. En fin, tras un examen del voluminoso expediente, es forzoso concluir que la señora Rodríguez Pagán necesitaba un defensor judicial.

En segundo lugar, el TPI violentó el debido proceso de ley de la señora Rodríguez Pagán debido a que emitió una *Sentencia Sumaria* siendo esta una persona declarada incapaz que no le designó un defensor judicial. Asimismo, el foro primario ni tan siquiera realizó esfuerzo alguno para celebrar una vista de capacidad para salvaguardar los intereses de la peticionaria ante su claro estado mental. Si bien es cierto que, la *Moción Solicitando Relevo de Sentencia* fue presentada luego del término establecido en la Regla 49.2 de Procedimiento Civil, supra, R. 49.2, aplicaremos la normativa expuesta en ***García Colón et al. v. Sucn. González,*** supra. pág. 544. Es decir, aunque la *Moción de Relevo Solicitando Sentencia* fue presentada posterior al término de seis (6) meses, es nuestro deber declarar nula la *Sentencia* emitida por el TPI en virtud de que la peticionaria sufrió una clara violación al debido proceso de ley.

A tenor con nuestra función revisora, resolvemos que el foro recurrido cometió los errores señalados. En atención a los hechos y al derecho aplicable, procede declarar la nulidad de la sentencia dictada en el caso CA2019CV034824 y los procedimientos posteriores llevados a cabo. El TPI deberá cumplir con el derecho sustantivo y procesal previo a dictar sentencia.

**V.**

Por los fundamentos pormenorizados, se *expide* el auto de *certiorari,* se *revoca* la *Resolución* recurrida y dejamos sin efecto la *Sentencia Sumaria* así como los procedimientos posteriores llevados a cabo. Se ordena a la parte recurrida consignar en la secretaría del TPI el dinero que retiró producto de la venta judicial, en virtud de una *Sentencia Sumaria* que ha sido declarada nula. Se devuelve el caso al TPI para que continúe con los procedimientos conforme a lo aquí resuelto.

Al haberse nombrado un defensor judicial y una abogada de oficio a la señora Rodríguez Pagán, estos continuarán desempeñándose como tal hasta que otra cosa disponga el foro recurrido.

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones. La Jueza Cintrón Cintrón concurre sin opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones